STEPTOE, JUDGE:
Carolyn R. Townsend and Jesse G. Townsend, husband and wife, of Moundsville, West Virginia, seek an award from the Division of Highways of the Department of Transportation of West Virginia, for property damage and personal injuries sustained by them in a one-car automobile accident which took place about 2035 on March 26, 1989, in Marion County, West Virginia, at Exit 132 on Interstate 79, alleging that negligence on the part of the Division of Highways was the proximate cause of the accident.
Claimants, with Jesse G. Townsend at the wheel, were proceeding northwardly along Interstate 79, en route from Shinnston to Moundsville, in their 1983 Toyota Mirage pickup *185 truck. It was dark and had been raining, and the surface of the road was wet. The temperature was falling and was at or approaching the freezing level.
According to the testimony of Jesse G. Townsend, he had been driving about 50 to 55 miles per hour, conforming to the general speed of other cars proceeding in the same direction at the same time. He was on a slight down grade, with his foot on the accelerator, approaching a bridge overpassing U.S. Route 250, and while on the bridge hit an unobserved ice patch and felt his vehicle going out of control. He released the accelerator, but was unable to regain control northwardly and toward the easterly berm, overturning on the paved surface of the easterly berm and bouncing into the air and coming to rest on its wheels on the paved surface of the ramp designated for use by northbound traffic entering Interstate 79. According to eyewitness Eugene Kubiet, driving a car on the ramp, the claimant’s vehicle, while “airborne” and at least eight feet off the ground, rotated at least three times before hitting the ground; his daughter, Susan D. Kubiet, a passenger in her father’s car, testified that claimant’s vehicle was much higher in the air and rotated only once. Both claimants were ejected from their vehicle and came to rest on said ramp. Claimants’ motor vehicle showed greatest damage to the front, considerable damage to both sides, and little damage to the rear, and was deemed to be a total loss.
Mrs. Townsend, who suffered head injuries, testified that she had no recollection of the accident or of the events leading up to the accident. Jesse Townsend felt the truck slide and heard crashing noises, and then passed out, recovering consciousness while he was prone on the ramp. The Kubiets, father and daughter, were the only other eyewitnesses who testified.
The position of the claimants is that the respondent knew or should have known of a dangerous condition of Interstate 79 where the accident took place and, having such notice, should have taken effective remedial measures; and that respondent’s failure to eliminate the ice patch on the bridge overpassing U.S. Route 250 was the sole proximate cause of said accident of March 6, 1989.
Respondent’s witness testified that for maintenance duties and responsibilities, the scene of the accident was in Section 1 Interstate 79, of District 4 of the Division of Highways, said Section comprising all of Interstate 79 from the Pennsylvania state line southward to about 300 feet south of Exit 132, a distance of some 28 miles; that' the personnel of Section 1 consisted of a supervisor, a clerk, a mechanic and seven workers; and that the mobile equipment allocated to Section 1, for SRIC (snow removal and ice control) consisted of two tandem trucks and two dump trucks with a spreader for each truck. It was established that the Division of Highways had a color code, classifying weather conditions on its highways, to-wit, code green for normal conditions, code blue when snow is predicted, and code yellow when it is deemed necessary to treat highways. On March 6, 1989, Section 1 went to code yellow at 1135 (Section 2 went to code yellow at 2100 on the same day), and placed its personnel on two 12-hour shifts to perform snow removal and ice control. Trucks made periodic sorties with loads of salt and cinders which were applied in places where the operators felt they were necessary, giving special attention to cuts through hills (where temperatures are lower) and to the wearing surfaces of bridges (which freeze before other surfaces *186 do so). Apparently, there was no ice on the road during daylight hours, but temperatures dropped after sundown. A truck with abrasives left headquarters of Section 1 at 1900 and covered the thirteen of fourteen miles southward from headquarters to Section 2, patrolling two lanes on each side of the midway, applying salt and cinders as required, and returned to headquarters at 2000; the operator, who did not know of the accident until about two days before he was deposed on December 9, 1991, had little or no recollection of his performance of duties, or of the condition of the road, on March 6, 1989; he testified on the basis of respondent’s records that he had made another run over the same route commencing at 2030, but he had no specific recollection of that run, either.
It appears to the Court that, as early as 1135 on the day of the accident, March 26, 1989, respondent’s supervisor of maintenance for the area containing the scene of the accident, put his working force and equipment on code yellow, for snow removal and ice control (SRIC); that patrolling of Interstate 79 was instituted and continued; and that salt and cinders were applied by respondent’s operative personnel as they deemed necessary from on-site inspections. A number of reasons may be advanced for the failure of respondent’s personnel to know that there was ice on the bridge where claimant’s slide commenced, but the Court declines to speculate.
In this case, the Court believes that respondent’s personnel followed all of the procedures required of them by existing directives, and that such procedures were all that were reasonably necessary for the protection of persons using the highway at the time and place of the accident. No higher standard was alleged or proved by claimants, although they suggest that something more could have or should have been done by the respondent, but, again, the Court declines to speculate. The State (respondent) is neither an insurer nor a guarantor of the safety of a traveler on its highway. Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947).
Claim disallowed.